REVISED, October 23, 2000

UNITED STATES COURT OF APPEALS
For the Fifth Circuit

---

No. 95-21074

---

FRANKLIN RODRIGUEZ DELGADO, ET AL. (Individually
and on behalf of all others similarly situated),

Plaintiffs-Appellants-Cross-Appellees,

VERSUS

SHELL OIL COMPANY; DOW CHEMICAL COMPANY; OCCIDENTAL CHEMICAL
CORPORATION (Individually and as successor to Occidental
Chemical Company and Occidental Chemical and Agricultural
Products, Inc.); STANDARD FRUIT CO.; STANDARD FRUIT AND
STEAMSHIP COMPANY; DOLE FOOD COMPANY, INC.; DOLE FRESH FRUIT
CO.; CHIQUITA BRANDS, INC.; CHIQUITA BRANDS INTERNATIONAL, INC.;
DEL MONTE TROPICAL FRUIT COMPANY,

Defendants-Appellees-Cross-Appellants,

DEL MONTE FRESH PRODUCE, N.A.,

Defendant-Third Party Plaintiff-Appellee-Cross-Appellant,

VERSUS

DEAD SEA BROMINE COMPANY, LTD.; AMERIBROM, INC.,

Third Party Defendants-Appellees-Cross-Appellants.

* * * * * * * * * * * * * * * * * * * * * * * * * *

JORGE COLINDRES CARCAMO, ET AL. (Individually, and on
behalf of all others similarly situated),

Plaintiffs-Appellants-Cross-Appellees,

VERSUS

SHELL OIL COMPANY; OCCIDENTAL CHEMICAL CORPORATION
(Individually and as successor to Occidental Chemical
and Occidental Chemical and Agricultural Products, Inc.);
STANDARD FRUIT COMPANY; STANDARD FRUIT AND STEAMSHIP
COMPANY; DOLE FOOD COMPANY, INC.; DOLE FRESH FRUIT
COMPANY; CHIQUITA BRANDS, INC.; CHIQUITA BRANDS
INTERNATIONAL, INC.,

Defendants-Appellees-Cross-Appellants,

DOW CHEMICAL COMPANY,

Defendant-Third Party Plaintiff-Appellee-Cross-Appellant,

VERSUS

DEL MONTE FRESH PRODUCE COMPANY (sued as Del Monte
Tropical Fruit Company); DEAD SEA BROMINE COMPANY,
LTD.; AND AMERIBROM, INC.,

Third Party Defendants-Appellees-Cross-Appellants,

DEL MONTE FRESH PRODUCE, N.A., INC.,

Third Party Defendant-Fourth Party
Plaintiff-Appellee-Cross-Appellant,

VERSUS

BROMINE COMPOUNDS, LTD.,

Fourth Party Defendant-Appellee-Cross-Appellant.

* * * * * * * * * * * * * * * * * * * * * * * *

JUAN RAMON VALDEZ, ET AL.,

Plaintiffs-Appellants-Cross-Appellees,

VERSUS

SHELL OIL COMPANY; OCCIDENTAL CHEMICAL CORPORATION
(Individually and as successor to Occidental Chemical
Company and Occidental Chemical and Agricultural
Products, Inc.); STANDARD FRUIT COMPANY; STANDARD
FRUIT AND STEAMSHIP COMPANY; DOLE FOOD COMPANY, INC.;
DOLE FRESH FRUIT COMPANY; CHIQUITA BRANDS, INC.;
CHIQUITA BRANDS INTERNATIONAL, INC.,

Defendants-Appellees-Cross-Appellants,

DOW CHEMICAL COMPANY,

Defendant-Third Party Plaintiff-Appellee-Cross-Appellant,

VERSUS

DEL MONTE FRESH PRODUCE, N.A.; DEL MONTE TROPICAL FRUIT
COMPANY; DEAD SEA BROMINE COMPANY, LTD.; AMERIBROM, INC.,

Third Party Defendants-Appellees-Cross-Appellants.

* * * * * * * * * * * * * * * * * * * * * * * * * *

ISAE CARCAMO,

Plaintiff-Appellant-Cross-Appellee,

VERSUS

DOW CHEMICAL COMPANY; OCCIDENTAL CHEMICAL CORPORATION
(Individually and as successor to Occidental Chemical
Company and Occidental Chemical and Agricultural
Products, Inc.); STANDARD FRUIT COMPANY; STANDARD
FRUIT AND STEAMSHIP COMPANY; DOLE FOOD COMPANY, INC.;
DOLE FRESH FRUIT COMPANY,

Defendants-Appellees-Cross-Appellants,

SHELL OIL COMPANY

Defendant-Third Party Plaintiff-Appellee-Cross-Appellant,


VERSUS


DEAD SEA BROMINE COMPANY, LTD.; AMERIBROM, INC.,

Third Party Defendants-Appellees-Cross-Appellants.

---

No. 97-20060

---

RAMON RODRIGUEZ RODRIGUEZ,

Plaintiff-Appellant,


VERSUS


SHELL OIL COMPANY; STANDARD FRUIT & STEAMSHIP COMPANY;
CHIQUITA BRANDS; CHIQUITA BRANDS INTERNATIONAL, INC.;
STANDARD FRUIT COMPANY,

Defendants-Third Party Plaintiffs-Appellees,

and

DOLE FOOD COMPANY, INC.; DOLE FRESH FRUIT CO.;
DOW CHEMICAL COMPANY; OCCIDENTAL CHEMICAL,

Defendants-Appellees,


VERSUS


BROMINE COMPOUNDS, LTD.; AMVAC CHEMICAL COMPANY;
DEAD SEA BROMINE COMPANY, LTD.,

Third Party Defendants-Appellees.

---

October 19, 2000

Before GARWOOD, WIENER, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In these consolidated appeals,[1] Plaintiffs-Appellants ("Plaintiffs"), who are several thousand foreign agricultural workers, challenge the district court's orders dismissing on forum non conveniens, five of six cases removed from Texas state court. Plaintiffs assert that the removals were improper and that the district court lacked subject matter jurisdiction. Concluding that removal and jurisdiction were proper in all of the five dismissed cases, we affirm.

## I. BACKGROUND

A.  Overview

Plaintiffs originally filed all six cases in various Texas state courts, seeking damages for injuries allegedly caused by their apparently incremental exposure over a considerable period to a nematocide, dibromochloropropane ("DBCP"), while working on banana farms in several foreign countries. Plaintiffs justify their presence in the state courts of Texas on provisions of a Texas statute that furnishes a Texas forum to a plaintiff who has

---

[1]  By a concurrent order, appeal No. 97-20060 is consolidated with appeal No. 95-21074.

been injured in a foreign country if that plaintiff is a citizen of a foreign country that has equal treaty rights with the United States. *See* Tex. Civ. Prac. & Rem. Code § 71.031. Defendants-Appellees (collectively "Defendants") are Shell Oil Company ("Shell"), Dow Chemical Company ("Dow"), Occidental Chemical Corporation ("Occidental"), Standard Fruit Company and Standard Fruit & Steamship Company (collectively "the Standard Fruit entities"), Dole Fresh Fruit Company and Dole Food Company, Inc. (collectively "the Dole entities"), Chiquita Brands, Inc., and Chiquita Brands International, Inc. (collectively "the Chiquita entities"), and Del Monte Tropical Fruit Company and Del Monte Fresh Produce, N.A. (collectively "the Del Monte entities"). Defendants are alleged to have designed, manufactured, sold, or used DBCP.

The filing of these cases in the state courts of Texas was by no means happenstance. In a classic exercise of forum shopping, Plaintiffs selected Texas because, among other plaintiff-friendly features, its law at the time of filing provided no applicable doctrine of forum non conveniens pursuant to which their actions could be dismissed. *See **Dow Chemical Co. v. Castro Alfaro***, 786 S.W.2d 674, 679 (Tex. 1990).[2]

_____

[2] The Texas legislature subsequently enacted a statute making the doctrine of forum non conveniens applicable to personal injury actions filed on or after September 1, 1993. *See* Tex. Civ. Prac. & Rem. Code § 71.051. Plaintiffs filed the instant actions before that date.

In response, Defendants determined that removal of these cases to federal court, where forum non conveniens was available, would be an effective way to send these suits back to their countries of origin. In pursuit of their objective, a different pre-designated defendant in each of the six cases first filed a third-party petition impleading Dead Sea Bromine Company, Limited ("Dead Sea"). Next, Dead Sea removed each action to federal court by virtue of its alleged status as a "foreign state" under the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1602-1611.[3] As the third step, Dead Sea waived its sovereign immunity in each of the federal cases.

But, among other things, Plaintiffs contend that Texas Rule of Civil Procedure 38(a) requires a third-party plaintiff to obtain leave of court to serve a third-party petition when it is filed more than thirty days after service of the defendant's original state court answer.[4] In four of the six cases, the third-party petitions were filed more than thirty days after the answers. In the remaining two cases, the third-party petitions were filed

---

[3] Under 28 U.S.C. § 1441(d), a foreign state is entitled to remove to federal court any civil action brought against it in a state court.

[4] Tex. R. Civ. P. 38(a) provides, "The third-party plaintiff need not obtain leave to make the service [on the third-party defendant] if he files the third-party petition not later than thirty (30) days after he serves his original answer. Otherwise, he must obtain leave on motion upon notice to all parties to the action."

7

within less than thirty days following the answers, so leave of court was not required.

B.    Prior Proceedings

Against this backdrop, we pause to recount in turn the individual procedural history of each case, for cognizance of the prior proceedings in each is essential to our determination of (1) the efficacy of Defendants' joinder of Dead Sea, (2) the validity of Dead Sea's removals, and (3) the existence of federal subject matter jurisdiction.

   1.    *Delgado v. Shell Oil Co.* ("*Delgado*")

The *Delgado* plaintiffs are more than 2,000 residents of three foreign countries who filed suit originally in Galveston County, Texas.[5]   The defendants in *Delgado* previously attempted to remove to federal court, asserting that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y, preempted the plaintiffs' claims and provided federal question jurisdiction.   The district court remanded, noting that even if the FIFRA preempted the *Delgado* plaintiffs' claims, there was no federal question jurisdiction.   *See* *Rodriguez v. Shell Oil Co.*, 818

_____

[5]   The *Delgado* plaintiffs are residents of Costa Rica, Nicaragua, or Panama.   The *Delgado* defendants are Shell, Dow, Occidental, the Standard Fruit entities, the Dole entities, the Chiquita entities, and the Del Monte entities.

8

F. Supp. 1013, 1018 (S.D. Tex. 1993).[6]  Subsequently, Defendant Del Monte Fresh Produce, N.A., filed an original answer in state court and, within thirty days, served a third-party petition impleading Dead Sea and its American affiliate, Ameribrom, Inc., ("Ameribrom") as third-party defendants.  State court leave to serve the third-party petition was not required.  Later the same day that the third-party petition was filed against it, Dead Sea removed the case to the Southern District of Texas, Galveston Division.[7]

The other defendants joined in the removal and filed cross-claims against Dead Sea and, in some cases, against one another.[8]  Shell filed supplemental notices of removal.  The *Delgado* plaintiffs filed a motion to remand, asserting lack of subject matter jurisdiction.  The district court denied the motion, concluding that Dead Sea was a foreign state entitled to remove,

---

[6]  Following remand, the state court consolidated *Delgado* with *Aguilar v. Shell Oil Co.*, an action brought in that court by an uncertified class of all persons (and their spouses) in Costa Rica who had been adversely exposed to DBCP that was allegedly designed, manufactured, marketed, distributed, or sold by one or more of the defendants and who had not already commenced an individual civil action.  The defendants in *Aguilar* are Shell, Dow, Occidental, and the Standard Fruit entities.

[7]  The district judge to whom the case was originally assigned recused himself.  The case was transferred to the Houston Division and assigned to the district judge whose decisions form the basis of these appeals.

[8]  Del Monte Fresh Produce, N.A., did not file a cross-claim against Dead Sea.

pursuant to 28 U.S.C. § 1441(d),[9] and consolidated *Delgado* with *Jorge*, which we consider next.

## 2. *Jorge Carcamo v. Shell Oil Co.* ("*Jorge*")

The *Jorge* plaintiffs are nine representatives who filed suit originally in Brazoria County, Texas, on behalf of themselves and an uncertified class of more than 16,000 citizens and residents of twelve foreign countries.[10] Defendant Dow filed a third-party petition against Dead Sea, Ameribrom, and the Del Monte entities and delivered a courtesy copy of that petition to Dead Sea. More than thirty days had elapsed since Dow had served its original answer in state court, and Dow did not obtain state court leave prior to filing the third-party petition. Regardless, on the same day that Dow filed its third-party petition, Dead Sea removed the case to the Southern District of Texas, Galveston Division.[11] Predictably, the other defendants joined in the removal, asserting

---

[9] The district court refrained from deciding at that time whether Dead Sea's presence conferred federal subject matter jurisdiction.

[10] The *Jorge* plaintiffs are residents of Burkina Faso, Costa Rica, Dominica, Ecuador, Guatemala, Honduras, Ivory Coast, Nicaragua, Panama, the Philippines, Saint Lucia, or Saint Vincent. One of the Honduran plaintiffs is allegedly a resident of California. The *Jorge* defendants are the same as those in *Delgado* with the exception of the Del Monte entities, which are not defendants in *Jorge*.

[11] The district judge to whom the case was originally assigned (and to whom *Delgado* had also been originally assigned) recused himself. The case was transferred to the Houston Division and ultimately assigned to the district judge whose decisions form the basis of these appeals.

10

additional bases of subject matter jurisdiction, and filed cross-claims.  Shell filed supplemental notices of removal.  The *Jorge* plaintiffs filed motions to remand, arguing that (1) Dead Sea's removal was procedurally defective for want of state court leave to serve Dead Sea, and that (2) the district court lacked subject matter jurisdiction as the *Jorge* plaintiffs' Seventh Amended Petition expressly renounced any intention of pursuing claims against Dead Sea or its affiliated entities, thus rendering Dead Sea's joinder "fraudulent."  Subsequent to removal, however, Dow moved for leave to serve an amended third-party complaint impleading, inter alia, Dead Sea.[12]  The motion was referred to a magistrate judge, who granted the motion.

---

[12] The other third-party defendants served were Ameribrom, the Del Monte entities, AMVAC Chemical Corp. ("AMVAC"), Saint Lucia Banana Growers Association, Saint Vincent Banana Growers Association, Dominica Banana Growers Association, and Programa Nacional de Banano.  Del Monte Fresh Produce, N.A., then filed a fourth-party complaint impleading Bromine Compounds, Ltd., ("Bromine") a wholly owned subsidiary of Dead Sea.  The district court later dismissed Dominica Banana Growers Association, Saint Lucia Banana Growers Association, Saint Vincent Banana Growers Association, and Programa Nacional de Banano.

*3.* ***Rodriguez v. Shell Oil Co.*** (*"Rodriguez"*)

The ***Rodriguez plaintiffs*** are Honduran citizens and residents who filed suit originally in Jim Hogg County, Texas.[13] Defendants Shell and the Chiquita entities filed third-party petitions against Dead Sea and Ameribrom more than thirty days after filing their original answers in state court, without any prior approval by the state court. After these petitions were filed, Dead Sea removed the case to the Southern District of Texas, Laredo Division. The other defendants joined in the removal, asserting additional bases of federal subject matter jurisdiction, and filed cross-claims against Dead Sea. Shell filed supplemental notices of removal. The ***Rodriguez*** plaintiffs moved to remand, asserting lack of subject matter jurisdiction. The district court in Laredo transferred ***Rodriguez*** to the Houston Division where it was consolidated with ***Delgado***, ***Jorge***, and the following case.

*4.* ***Erazo v. Shell Oil Co.*** (*"Erazo"*)

In ***Erazo***, a lone Honduran citizen filed suit originally in Hidalgo County, Texas.[14] Defendant Shell filed a third-party petition against Dow, Occidental, Dead Sea, Ameribrom, and AMVAC

---

[13] One ***Rodriguez*** plaintiff is alleged to be a resident of Texas and another a resident of Michigan. The ***Rodriguez*** defendants are the same as those in ***Jorge***.

[14] Shell attempted to remove, asserting federal question jurisdiction based on FIFRA preemption, but the district court remanded for lack of subject matter jurisdiction, as it did in ***Delgado*** and ***Rodriguez***.

12

more than thirty days after answering and without leave to serve the petition. Dead Sea immediately removed the case to the Southern District of Texas, McAllen Division. The remaining defendants joined in the removal, asserting additional bases of federal subject matter jurisdiction, and filed cross-claims against Dead Sea. Shell filed supplemental notices of removal. The **Erazo** plaintiff moved to remand, asserting lack of subject matter jurisdiction. The district court transferred the case to the Houston Division where it was consolidated with the others.

5. **Isae Carcamo v. Shell Oil Co.** ("**Isae**")

**Isae** was originally brought in Morris County, Texas, by another lone Honduran citizen and resident.[15] Defendant Dow filed a single pleading containing both an answer and a third-party petition against Dead Sea, Ameribrom, and the Del Monte entities. As a result, state court leave to serve that petition was not required. Dead Sea removed the case to the Eastern District of Texas, and the other defendants joined in the removal, asserting additional bases of federal subject matter jurisdiction, and filed cross-claims against Dead Sea. Shell filed supplemental notices of removal. The **Isae** plaintiff moved to remand, asserting lack of

---

[15] Originally, Shell was the only **Isae** defendant. Shell filed a notice of removal, asserting federal question jurisdiction based on FIFRA preemption, but the district court remanded the case for the reasons articulated in **Delgado**, **Rodriguez**, and **Erazo**. The plaintiff then amended his petition to add, as defendants, Dow, Occidental, the Dole entities, and the Standard Fruit entities.

13

subject matter jurisdiction.  The case, however, was consolidated with **Valdez**, which we consider last.

6.    ***Valdez v. Shell Oil Co.*** ("***Valdez***")

The plaintiffs in **Valdez** are more than 6,000 citizens of eight foreign countries who filed suit originally in Morris County, Texas.[16]  More than thirty days after answering, Defendant Dow filed a third-party petition against the Del Monte entities, Dead Sea, and Ameribrom and delivered a courtesy copy of that petition to Dead Sea.  Dead Sea removed the case to the Eastern District of Texas.  The other defendants joined in the removal, asserting additional bases of federal subject matter jurisdiction, and filed cross-claims against Dead Sea.  Shell filed supplemental notices of removal.  The district court consolidated **Valdez** with **Isae**.

Subsequent to removal, Dow moved for leave to serve an amended third-party complaint to implead, inter alia, Dead Sea.[17]  The magistrate judge assigned to the **Valdez** case granted the motion and also denied remand in both **Valdez** and **Isae**, concluding that federal subject matter jurisdiction existed in the two cases.  Thereafter,

---

[16] The **Valdez** plaintiffs are citizens of Burkina Faso, Dominica, Ecuador, Honduras, Ivory Coast, the Philippines, Saint Lucia, or Saint Vincent.  At least two of them allegedly reside in Texas. The **Valdez** defendants are the same as those in **Jorge**.

[17] The other third-party defendants served were Ameribrom, the Del Monte entities, AMVAC, Saint Lucia Banana Growers Association, St. Vincent Banana Growers Association, and Programa Nacional de Banano.

14

*Valdez* and *Isae* were transferred to the Southern District of Texas, Houston Division, where they were consolidated with the other four cases.

C.   The Houston District Court's Proceedings

Once the six cases were consolidated in the Houston Division of the Southern District, Plaintiffs filed (1) motions to remand, asserting lack of subject matter jurisdiction and procedurally defective removal, and (2) motions to strike the third-party claims or, in the alternative, to dismiss Dead Sea and its affiliated entities for fraudulent joinder, and to remand the underlying claims.  Defendants contested the fraudulent joinder allegation, asserting the validity of their third-party claims against Dead Sea based on the laws of the home countries of several of the plaintiffs.  As a final step, Defendants filed motions to dismiss all of the removed cases for forum non conveniens.

The district court addressed first whether Dead Sea's removals were proper in *Jorge*, *Valdez*, *Rodriguez*, and *Erazo*, the cases in which Texas law required leave of state court to serve the third-party petitions.  The court concluded that all removals were premature and, thus, defective for want of leave. Deferring to the authority of the state court to determine in the first instance whether third-party joinder was appropriate, the district court remanded *Rodriguez* and *Erazo*.  On appeal, neither party challenges this decision to remand.

15

In *Jorge* and *Valdez*, however, the district court noted that magistrate judges had issued post-removal orders granting leave to implead Dead Sea into federal court pursuant to Federal Rule of Civil Procedure 14. The district court assumed that Dead Sea had, thus, validly been made a party in federal court and would remain a party on remand to state court. Speculating that Dead Sea would "immediately exercise its presently mature right to again remove the actions to federal court," the district court concluded that remand would be futile and denied remand.

The district court also denied remand in the final two cases, *Delgado* and *Isae* (the "under thirty days" cases), in neither of which had leave to make service on Dead Sea been required under Texas law.[18] Invoking the doctrine of forum non conveniens, the district court then dismissed all four cases that remained unremanded -- the two "over thirty days" cases and the two "under thirty days" cases.

As conditions precedent to dismissal, the district court required Defendants (including third- and fourth-party defendants) to (1) waive all jurisdictional and certain limitation-based defenses, (2) permit the dismissed plaintiffs a reasonable period within which to conduct discovery before trial in their home

_____

[18] In *Delgado*, Del Monte Fresh Produce, N.A., filed a third-party petition against Dead Sea within thirty days of the service of its (Del Monte's) answer in state court. In *Isae*, Dow filed a single pleading containing an answer and a third-party petition against Dead Sea.

countries, and (3) agree to satisfy those plaintiffs' concerns with respect to the enforceability of foreign judgments that might be rendered against Defendants. In addition, the district court permanently enjoined the dismissed plaintiffs from commencing or causing to be commenced in the United States any DBCP action and from intervening in *Rodriguez* and *Erazo*, the two remanded cases. Finally, the district court agreed that it would re-assume jurisdiction, on proper motion, if the highest court in any foreign country should affirm a dismissal for lack of jurisdiction over any action commenced by a dismissed plaintiff in his home country or his country of injury.

D.    The Agreements Between Defendants And Dead Sea

On the day that Dead Sea was required to stipulate to foreign judgment, Defendants and Dead Sea entered into a pair of agreements which together allocated their joint liability in the event of an adverse judgment.[19] Those agreements stipulated Dead Sea's maximum percentage market share liability in each foreign country. In no country was that share greater than 2.5%.

As soon as Plaintiffs got word of the existence of the

---

[19] The first agreement was executed by the "Manufacturer Defendants," defined as Dow, Shell, and Occidental, and "Dead Sea," defined as Dead Sea and Bromine. The second agreement was executed by the "Non-Manufacturer Defendants," defined as the Standard Fruit entities, the Dole entities, the Del Monte entities, and the Chiquita entities, and "Dead Sea," again defined as Dead Sea and Bromine.

agreements, they filed a motion for relief from final judgment, pursuant to Federal Rule of Civil Procedure 60(b)(2), arguing that Defendants (1) never intended to prosecute their claims against Dead Sea and (2) joined Dead Sea only to gain entry into federal court. Plaintiffs asked the district court to remand the entire matter to state court or, in the alternative, to sever the third-party claims and remand the underlying ones. The district court denied Plaintiffs' motion.

E.    The Re-Removal Of *Rodriguez*

When the district court remanded *Rodriguez* to Texas state court on July 11, 1995, the Standard Fruit entities had on file a "Special Appearance Objecting to Jurisdiction, First Amended Motion to Transfer Venue, or in the Alternative Motion to Dismiss, and First Amended Original Answer." In essence, the Standard Fruit entities had filed their answers subject to and without waiving their special appearances. Upon remand, the state court addressed and denied the Standard Fruit entities' special appearances on February 2, 1996, with the order filed on February 5, 1996. On March 4, 1996, without obtaining leave from the state court, the Standard Fruit entities filed third-party petitions naming Dead Sea, Bromine, and AMVAC as third-party defendants and delivered courtesy copies to Dead Sea and to Bromine. Thereafter, Dead Sea and Bromine removed the case to the Laredo Division of the Southern

18

District of Texas, asserting federal question jurisdiction as a foreign state under the FSIA. The case was then transferred to the federal district court at Houston, whose decisions form the basis of these appeals.

In the district court, the *Rodriguez* plaintiffs moved for remand, arguing that the Standard Fruit entities should have asked for leave from the state court before filing their third-party petitions pursuant to Rule 38(a) because the Standard entities had filed their original answers in August of 1993 and their amended original answers on September 17, 1993, over two years from the time that the Standard Fruit entities had filed their third-party petitions. The district court denied the motion, finding that the Standard Fruit entities' answers were conditional and did not become effective for purposes of Rule 38(a) until the state court overruled the Standard Fruit entities' special appearances. As in *Delgado*, the *Rodriguez* plaintiffs sought to strike the third-party claims on grounds of fraudulent joinder or, in the alternative, to sever the third-party claims while the Defendants moved for dismissal on forum non conveniens. The district court denied the *Rodriguez* plaintiffs' motions, but granted dismissal subject to the same conditions as in *Delgado*.

F.   The Appeals[20]

---

[20] *Erazo* is not on appeal.

19

In appeal No. 95-21074, Plaintiffs timely seek review of the district court's dismissal of the "over thirty days" cases (*Jorge* and *Valdez*) and the "under thirty days" cases (*Delgado* and *Isae*), asserting that the district court erred in denying remand and in dismissing these cases for forum non conveniens.  Specifically, Plaintiffs maintain that: (1) Dead Sea is not a "foreign state" under the FSIA; (2) the magistrate judges' orders in the "over thirty days" cases were nullities which could neither cure Defendants' defective joinder of Dead Sea and Dead Sea's premature removal nor confer on the district court its otherwise lacking subject matter jurisdiction; (3) Dead Sea was fraudulently joined; and (4) the district court abused its discretion in denying Plaintiffs' Rule 60(b)(2) motion.  In appeal No. 97-20060, besides charging that Dead Sea is not a "foreign state" under the FSIA and that it was fraudulently joined, Plaintiffs contend that the district court erred when it ruled that the Standard Fruit entities' answers did not become effective for purposes of Rule 38(a) until the state court overruled their special appearances. In neither of the appeals, however, do Plaintiffs explicitly take umbrage with the substance of the district court's forum non conveniens analysis, or its use by the court were we to conclude that it had subject matter jurisdiction.[21]

---

[21] Defendants and third-party defendants also cross-appealed, seeking modification of the district court judgment to incorporate the protections of the Uniform Foreign Money-Judgments Recognition

A.    Subject Matter Jurisdiction And The Foreign Sovereign Immunity Act

Before proceeding to the other issues raised in these appeals, we must first address whether the district court would have subject matter jurisdiction over any case that Dead Sea properly removed, for original jurisdiction is absolutely essential to the maintenance of an action in federal court. *See* ***Avitts v. Amoco Prod. Co.***, 53 F.3d 690, 693 (5th Cir. 1995). If we conclude that the district court lacked subject matter jurisdiction, we have no choice but to remand the cases to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). We review questions of federal subject matter jurisdiction de novo. *See* ***United States v. Teran***, 98 F.3d 831, 833-34 (5th Cir. 1996).

The district court based its jurisdiction solely on Dead Sea's presence in the cases, concluding that Dead Sea was a "foreign state" entitled to remove to federal court and that its waiver of sovereign immunity conferred jurisdiction. Under the express provisions of 28 U.S.C. § 1330, the district courts are vested with

---

Act and equivalent common law rules. Defendants later withdrew their request to modify the district court judgment after Plaintiffs conceded that nothing in the district court's orders or the agreements submitted by Defendants, as required by those orders, deprives Defendants of the protections of those laws.

original jurisdiction of civil actions against a foreign state as defined by § 1603(a), as to which the foreign state is not entitled to immunity under §§ 1605-1607. Furthermore, according to the federal removal statutes, a foreign state, as defined in 28 U.S.C. § 1603(a), may remove any civil action brought against it in a state court. *See* 28 U.S.C. § 1441(d). Section 1603 provides in pertinent part:

> (a) A "foreign state", . . . includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
>
> (b) An "agency or instrumentality of a foreign state" means any entity --
>
> > (1) which is a separate legal person, corporate or otherwise, and
> >
> > (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> >
> > (3) which is neither a citizen of a State of the United States . . ., nor created under the laws of any third country.

28 U.S.C. § 1603. Dead Sea is not "a political subdivision of a foreign state;" therefore, to pass muster as a foreign state, it must be an "agency or instrumentality of a foreign state as defined in subsection (b)." *Id.* None of the parties question that Dead Sea meets the first and third requirements of that subsection; the only issue is whether a majority of Dead Sea's shares are owned by a foreign state, as required by (b)(2).

22

Indisputably a foreign state, the State of Israel owns 75.3% of Israel Chemicals Limited, an entity which owns 88.2% of Dead Sea Works Limited, which in turn owns 100% of Dead Sea. Through this tiered structure, there is no question that Israel indirectly owns a majority interest in Dead Sea. Plaintiffs insist, however, that indirect ownership is insufficient to qualify an entity for foreign state status. We disagree. Based on our reading of the statute, we discern nothing to support the proposition that indirect ownership of the requisite percentage precludes an entity from qualifying as a foreign state.

The plain language of the statute simply requires "ownership" by a foreign state. It draws no distinction between direct and indirect ownership; neither does it expressly impose a requirement of direct ownership. Indeed, we have previously indicated that indirect ownership is sufficient to confer foreign state status. In *Linton v. Airbus Industrie*, we stated:

> [T]he resolution of the Airbus Defendants' claim of immunity turns on whether through "tiering" a foreign state's ownership interest can be attributed when that foreign state did not own a majority interest in the company that held the ownership interest in Airbus . . . .[Section 1603], however, erects no explicit bar to the methods by which a foreign state may own an instrumentality, merely requiring that the *entity claiming immunity* -- not its parent -- have a "majority of [its] shares or other ownership interest . . . owned by a foreign state or a political subdivision thereof." There is no mention of "voting" or "control" majority, thus equitable or beneficial majority ownership is not expressly prohibited from serving.

23

30 F.3d 592, 598 n.29 (5th Cir. 1994) (citations omitted).  Should any doubt remain concerning this Circuit's position on tiering or indirect ownership, we squarely hold today that indirect or tiered majority ownership is sufficient to qualify an entity as a foreign state, assuming that all other requirements are met.  In so doing, we join at least two other Circuits that have considered the issue and reached the same conclusion.  *See **In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994***, 96 F.3d 932, 941 (7th Cir. 1996); ***Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.***, 10 F.3d 425, 426–27 (7th Cir. 1993); and ***Gould, Inc. v. Pechiney Ugine Kuhlmann***, 853 F.2d 445, 449–50 (6th Cir. 1988).  *But see **Gates v. Victor Fine Foods***, 54 F.3d 1457, 1462 (9th Cir. 1995).  We hold, therefore, that Dead Sea is a foreign state for purposes of the FSIA and can create federal subject matter jurisdiction in actions that it properly removes to federal court.  We turn next to consider the validity of Dead Sea's removals.

B.   Removal

   *1.   Standard of Review*

In dismissing the cases for forum non conveniens, the district court implicitly denied plaintiffs' motions to remand.  We review the district court's refusal to remand de novo.  *See **Herron v. Continental Airlines, Inc.***, 73 F.3d 57, 58 (5th Cir. 1996).

   *2.   Removal and Texas Rule of Civil Procedure 38(a)*

24

In the "over thirty days" cases, Texas Rule of Civil Procedure 38(a) required state court leave to serve third-party petitions on Dead Sea. Even though the required leave was not obtained before removal, the district court upheld the validity of Dead Sea's removals by relying on the post-removal orders of two federal magistrate judges who granted leave to implead Dead Sea pursuant to Federal Rule of Civil Procedure 14.

Plaintiffs contend that the district court erred in relying on those orders.[22] Plaintiffs' logic proceeds as follows: (1) at the time of removal, the state court had not granted leave to serve Dead Sea, so Dead Sea was not a party in state court; (2) as a non-party, Dead Sea could not remove to federal court; (3) without Dead Sea's presence in federal court, there was no federal subject matter jurisdiction; and (4) in the absence of subject matter jurisdiction, (a) the magistrate judges had no authority to issue post-removal orders, and (b) the district court had no choice but to remand.

In the face of the district court's ruling that there had to have been state court leave to serve the third-party petitions on Dead Sea and that the removals were, therefore, premature, we recognize the logical force of Plaintiffs' argument. Nevertheless, we reject Plaintiffs' desired result because, contrary to the

---

[22] Because state court leave to serve the third-party petitions was not required in the "under thirty days" cases, Plaintiffs do not challenge their removal on the basis of a failure to comply with Rule 38(a).

25

district court and Plaintiffs' view, the removals were not premature. Generally, service of process is not an absolute prerequisite to removal. Section 1446(b) expressly provides for removal of a civil action or proceeding within thirty days after the receipt by the defendant, "through service or otherwise, of a copy of an amended pleading, motion, or order or other paper from which it may first be ascertained that the case is one which is or has become removable." We read § 1446(b) and its "through service or otherwise" language as consciously reflecting a desire on the part of Congress to require that an action be commenced against a defendant before removal, but not that the defendant have been served.[23] Indeed, 28 U.S.C. § 1448, which provides that service may be completed in district court for any removed case from state court in which any one or more of the defendants was not served with process or in which the service was not perfected prior to removal, reinforces a less demanding view of the service "requirement" prior to removal. And under Texas law, an action has commenced when a petition is filed. *See* Tex. R. Civ. P. 22.

Moreover, the removal statute pertaining to a FSIA entity, does not refer to a served party, or even the term "party," and it does not differentiate between parties who have been served and

---

[23] In **Murphy Bros. v. Michetti Pipe Stringing**, 119 S. Ct. 1322 (1999), the Supreme Court found that mere receipt of a complaint unattended by any formal service did not trigger a defendant's time to remove a case from state court. But the decision did not address whether service was a prerequisite for a defendant to be able to remove a case.

those who have not. *See* 28 U.S.C. § 1441(d). Instead, that removal statute merely states that "[a]ny civil action brought in a State court against a foreign state . . . may be removed by the foreign state to the district court . . . ." In light of the fact that Texas views an action as having commenced when a petition is filed, Defendants' filing of their third-party claims initiated civil actions against Dead Sea, which allowed for the instant cases to be removed under § 1441(d).[24]

Accordingly, Defendants' failure to seek leave under Rule 38(a) to serve the third-party petitions on Dead Sea did not materially affect Dead Sea's right to remove the instant cases from state court, and the removals were not improper. Because service was not a prerequisite to the removal of the "over thirty days" cases, we need not address in **Rodriguez** whether the Standard Fruit entities' answers became effective for purposes of Rule 38(a) only after the state court overruled their special appearances.

---

[24] In the case of a third-party petition, one might argue that under Texas law such a complaint should be viewed differently than an initial petition with respect to when an action has commenced. That is, a third-party action should not be viewed as having commenced until the third-party petition has been filed and served. Rule 22, however, makes no distinction between an initial petition and a third-party petition. The filing of both kinds of petitions commences an action. Additionally, the history of Rule 38(a) and third-party petitions indicates that any distinction between the two kinds of petitions, which may have existed in the past, regarding the commencement of an action was likely eviscerated by amendments enacted in 1984. Before that year, a party had to seek leave of court to file and to serve a third-party petition. *See* Tex. R. Civ. P. 38(a) (Vernon 1979, amended 1984). After the amendments, only leave to serve is required. *See* Tex. R. Civ. P. 38(a).

27

*3.    Fraudulent or Collusive Joinder*

As another basis for remand, Plaintiffs insist that defendants "fraudulently" joined Dead Sea for no purpose but to have it invoke FSIA jurisdiction as Defendants' ticket for admission into federal court.  For support, they refer to: 1) the speed with which the removals occurred; 2) the post-removal agreements between Defendants and Dead Sea; and 3) two of their amended petitions, which expressly state that they are not asserting any claims arising out of products attributable to Dead Sea.

We have normally confronted the fraudulent joinder doctrine when a defendant removes a case based on diversity jurisdiction and charges that the plaintiff fraudulently joined a non-diverse defendant to try to prevent removal.  That doctrine has not been applied where, as here, a third-party, foreign sovereign is alleged to have been joined willingly and cooperatively to create jurisdiction as a basis for removal.  Recognizing this, the district court pressed a different inquiry of the facts surrounding Dead Sea's joinder, pursuant to 28 U.S.C. § 1359, which prohibits federal jurisdiction "in a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  "Section 1359 is designed to prevent the litigation of claims in federal court by suitors who by sham, pretense, or other fiction acquire a spurious status that would allow them to invoke the limited jurisdiction of the federal courts." **Nolan v. Boeing Co.**, 919 F.2d 1058, 1067 (5th

Cir. 1990). Its purpose is "to prevent the manipulation of jurisdictional facts where none existed before." *Id.* And it has generally been restricted to circumstances involving assignment of interests from non-diverse to diverse parties to collusively create diversity jurisdiction. *See, e.g.,* **Kramer v. Caribbean Mills, Inc.**, 89 S. Ct. 1487 (1969). Because Plaintiffs did not aver that Defendants had manufactured Dead Sea's status as a foreign sovereign or their claims for contribution or indemnity against Dead Sea, the district court was not persuaded that any jurisdictional facts had been collusively manipulated in contravention of § 1359. We believe that the district court was correct in holding that § 1359 was not applicable.

On appeal, Plaintiffs do not appear to challenge the district court's § 1359 analysis. Rather, they question the district court's reliance on that statute as opposed to an analysis predicated on the fraudulent joinder doctrine. As we previously noted, the district court declined to apply that doctrine because it perceptively realized that fraudulent joinder is normally reserved for cases where a third party is alleged to have been joined to defeat diversity jurisdiction as a basis for removal. Accordingly, we are wary of recognizing the applicability of that judicially constructed doctrine in a new context. Moreover, whether we ought to apply the fraudulent joinder doctrine to situations where a third-party, foreign sovereign is alleged to

29

have been joined willingly and cooperatively to create jurisdiction as a basis for removal is complicated by the doctrine's intersection with Congress's paramount desire that a foreign sovereign have access to a federal forum to ensure uniformity in procedure and substance. *See*, *e.g.*, **Nolan**, 919 F.2d at 1065. That is, to craft a fraudulent joinder rule to an FSIA entity's right to remove an action from state court would conflict with Congress's intent. We need not, and do not, resolve these issues today, for it is apparent that even if the fraudulent joinder doctrine were to apply to the instant case, Plaintiffs have failed to establish that Dead Sea was fraudulently joined.

In those more typical fraudulent joinder cases where a party has been joined to defeat removal, the burden of persuasion is on the one who cries fraudulent joinder.[25] *See* **B., Inc. v. Miller Brewing Co.**, 663 F.2d 545, 549 (5th Cir. Unit A Dec. 1981). To establish fraudulent joinder, the party crying foul must show that

---

[25] In the more typical fraudulent joinder case, the party crying fraudulent joinder is also the party removing the case. Because the party invoking removal jurisdiction has the burden of establishing federal court jurisdiction, *see* **Frank v. Bear Stearns & Co.**, 128 F.3d 919, 921-22 (5th Cir. 1997), one might argue that the burden of persuasion should still be with the party who removed the case rather than with the party seeking remand but charging fraudulent joinder. Such an argument, however, presumes that the removing party has not already satisfied its burden to establish federal court jurisdiction. After the removing party has satisfied its burden to establish federal court jurisdiction, the burden of persuasion with respect to the issue of fraudulent joinder to create federal court jurisdiction shifts to the party charging fraudulent joinder.

there is no reasonable probability of recovery against the joined party or that there has been outright fraud in the pleadings of jurisdictional facts. *See* **id.** If there is no arguably reasonable basis for believing that liability may be established against the joined party, then remand is appropriate. *See* **id.** at 550. Normally, a court reviewing allegations of fraudulent joinder should refrain from conducting an evidentiary hearing but may utilize a summary judgment-like procedure. *See* **Burchette v. Cargill**, 48 F.3d 173, 176 (5th Cir. 1995).

To support their fraudulent joinder allegations, Plaintiffs' rely upon three main points: 1) the speed with which the removals occurred; 2) the post-removal agreements between Defendants and Dead Sea; and 3) two of Plaintiffs' amended state court petitions, which expressly state that they are not asserting any claims arising out of products attributable to Dead Sea. With respect to the first point, the intervals between the filing of the third-party petitions by Defendants and the filing of the notices of removal by Dead Sea were short, but in our view that time interval in and of itself is not enough to establish fraudulent joinder. Indeed, opposing parties often notify each other about pending petitions and arrange for their convenient delivery. *See*, *e.g.*, 28 U.S.C. § 1608(b)(1) (contemplating special arrangements for service by parties suing agencies or instrumentalities of foreign states). As for Plaintiffs' second point, the post-removal agreements

31

between Defendants and Dead Sea were dated nearly sixteen months after the filing of the third-party petitions against Dead Sea in state court and the removal of those cases. There is nothing in the record reflecting any negotiation and agreement between Defendants and Dead sea prior to the filing of the third-party petitions and the notices of removal. Absent such proof, Plaintiffs have not established that no cause of action could possibly have been asserted against Dead Sea by Defendants at the time of removal.

Plaintiffs' third basis for fraudulent joinder, however, merits further discussion. At the time of removal, in two of the dismissed cases, *Jorge* and *Rodriguez*, the latest state court amended petitions expressly stated that Plaintiffs were not asserting any "claims because of exposure to DBCP or DBCP-containing products designed, manufactured, marketed distributed, or used by Dead Sea Bromine Co., Ltd., Ameribrom, Inc., Israel Chemical Co., Ltd., Dead Sea Works, Ltd., and the State of Israel." The critical issue becomes what law determines the effect of those disclaimers. Without explanation, Plaintiffs seem to think that Texas law applies to this determination and dictates the outcome of any fraudulent joinder analysis.[26] Indeed, the only affidavit that

---

[26] The only legal authority that Plaintiffs refer to is an order in an unrelated DBCP case by a Texas state court judge denying certain defendants motion to apply Costa Rican law. That order, though, does not state that Texas law, or any other law, is the governing law.

either Plaintiffs or Defendants refer to in their briefs with respect to the choice of law issue does not support Plaintiffs' position but actually suggests the opposite. Defendants, on the other hand, make a blanket assertion that the relevant choice of law for determining whether a party was fraudulently joined in a DBCP-related case is the law of the country where the plaintiff was exposed to DBCP, i.e., Honduras in the case of *Rodriguez* and various foreign countries in the case of *Jorge*. For support, they cite to a decision out of the Eleventh Circuit. *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1562 (11th Cir. 1989). In *Cabalceta*, several Costa Rican plaintiffs brought suit in Florida state court against several defendants, including many in the present appeals, for injuries from exposure to DBCP. The defendants removed the case to federal district court where it was ultimately dismissed on forum non conveniens. Among the issues on appeal was whether the plaintiffs had fraudulently joined one of the defendants, Dole Fresh Fruit Co. ("Dole"), to defeat removal. To determine whether the plaintiffs had a colorable cause of action, the district court applied Florida law. The plaintiffs charged that this was error because when the district court dismissed the case on forum non conveniens, it ruled that Costa Rican law would apply. Noting that the plaintiffs' pleadings at the time of removal did not definitely assert that they were proceeding against Dole under Florida law, the Eleventh Circuit

agreed with the plaintiffs and reversed, remanding the fraudulent joinder issue so that the plaintiffs' cause of action against Dole could be evaluated under Costa Rican law.

We find *Cabalceta* instructive but not dispositive of the instant cases.  We note first that Plaintiffs have not alleged in either *Jorge* or *Rodriguez* that their claims are made under the laws of any particular state or nation.  Next, we turn to the Texas law of conflicts for guidance as Texas is the state in which the forum district court sits.  *See **W.R. Grace & Co. v. Continental Cas. Co.***, 896 F.2d 865, 873 (5th Cir. 1990).  In ***Gutierrez v. Collins***, 583 S.W.2d 312, 318 (Tex. 1979) (Johnson, J.), the Texas Supreme Court adopted the most significant relationship test as enunciated in sections 6 and 145 of the Restatement (Second) of Conflicts as governing all conflicts cases sounding in tort.  Those sections provide:

§ 6. Choice of Law Principles

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative

34

interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

§ 145.    The General Principle

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

In addition, § 173 of the Restatement (Second) of Conflicts states that "[t]he law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor."  At least one court has interpreted that section to mean that the source of law governing the primary liability claim is also the source of law governing the contribution claim.  *See 50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.*, No. SA-95-CA-159, 1997 WL 790739, at *12 (W.D. Tex. May 20, 1997); *cf. Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 235 (5th Cir. 1985) ("This court has held that the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party.").

Our evaluation of the choice of law issue under these prescribed rules leads us to conclude that Texas law would not qualify as the appropriate source of law.  Among other things, more than 99 percent of the *Jorge* and *Rodriguez* plaintiffs are citizens of another country and not of the United States.  All of the plaintiffs' injuries occurred in various foreign countries, principally Honduras, and those foreign countries obviously have an interest in protecting the rights and welfare of their citizens.  And even if the source of law governing Defendants' contribution claims were different than that for governing the primary liability issue, our review suggests no reason why Texas law would

36

necessarily be the preferred choice. As the party crying foul, Plaintiffs have the burden of proof and persuasion to show that there is no arguably reasonable basis for believing that liability may be established against Dead Sea. Plaintiffs have not cited us to any case law or statutory provision of any jurisdiction, other than Texas, likely to be chosen as the source of law for determination of (i) the Plaintiffs' liability claim against the various Defendants, (ii) the claims for indemnity or contribution among the various Defendants, or (iii) the effects of Plaintiffs' disclaimer respecting Dead Sea on any of the foregoing.

Given the multiplicity of differing provisions that the various systems of jurisprudence in the countries involved in this litigation have on the subjects of primary tort liability, apportionment of liability among joint tortfeasors, indemnity and contribution, and the disclaimer in this case, and given the incremental nature of the claimed exposure, the numerous sources of DBCP's going into the particular products produced by the manufacturing Defendants, the apparently very small and undifferentiated percentage attributable to Dead Sea, and the various quantities of product that each grower Defendant could have purchased from any particular manufacturer, we conclude that Plaintiffs have failed to sustain their burden. Therefore, we are unable to conclude that Defendants fraudulently or collusively joined Dead Sea to create federal court jurisdiction and to remove

37

their cases.[27]

C.   Rule 60(b)(2) And The Motion To Sever

Plaintiffs' final attempt for relief pertains to the district court's denial of their Motion for Relief from Final Judgment pursuant to Federal Rule of Civil Procedure 60(b)(2).  That motion was filed subsequent to Plaintiffs' discovery of the post-removal agreements between Defendants and Dead Sea.  According to Plaintiffs, those agreements illustrate 1) that there was fraudulent or collusive joinder, and 2) that Defendants no longer have any valid claims against Dead Sea and, hence, no basis for federal court jurisdiction.  Apparently, intertwined with the denial of the Rule 60(b)(2) motion was another ruling denying Plaintiffs' request, in the alternative, to sever the third-party claims from the primary claims and to remand those primary claims back to state court.  We review both of the district court's denials for abuse of discretion.  *See* Fed. R. Civ. P. 14 advisory committee's note (stating that a district court has discretion with respect to severance of a third-party claim); *Barrs v. Sullivan*, 906 F.2d 120, 121 (5th Cir. 1990) ("The standard of review is whether the district court plainly abused its discretion in denying the rule 60(b) motion.").

_____

[27] Because Dead Sea is an agency or instrumentality of a foreign state and because Defendants did not prematurely remove their cases or fraudulently implead Dead Sea, we need not address Defendants' other arguments for removal and subject matter jurisdiction.

38

Under Rule 60(b)(2), "on motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)." Due to our conclusions with regard to the fraudulent joinder allegations, we find no abuse of discretion based on Plaintiffs' first contention that the post-removal agreements illustrate fraudulent or collusive joinder. As for Plaintiffs' second contention that the agreements demonstrate that Defendants have no valid claims against Dead Sea and, thus, no basis for federal court jurisdiction, we agree with the district court that there is still a case or controversy between Defendants and Dead Sea. Although the agreements cap the maximum liability that Dead Sea may owe to Defendants for their third-party claims, the agreements do not definitely outline what the actual liability is and Dead Sea is not barred from still contesting its liability. Accordingly, we conclude that the district court did not abuse its discretion when, confronted with the agreements between Defendants and Dead Sea, it denied Plaintiffs' Rule 60(b)(2) motion.

Lastly, the district court did not abuse its discretion when it denied Plaintiffs' request to sever Defendants' third-party claims from the primary claims and to remand those primary claims to state court. Indeed, at least one other circuit has held that a district court has no discretion to remand a plaintiff's claims

39

when a FSIA third-party defendant has removed the third-party and primary claims to federal court. *See* **In re Surinam Airways Holding Co.**, 974 F.2d 1255, 1260 (11th Cir. 1992). Although we decline to address the specifics of that holding at this time, the Eleventh Circuit's decision suggests that the district court's decision was not an abuse of discretion. Furthermore, we note that there was no indication that the third-party claims unduly complicated or overburdened the primary claims. On the contrary, policy interests such as efficiency warranted the disposition of all those claims together. Thus, we find no abuse of discretion in the district court's refusal to sever the third-party claims from the primary claims and to remand those primary claims to state court.

## III. CONCLUSION

Initially, we hold that the majority ownership requirement for an entity to qualify as a "foreign state" under the FSIA is satisfied by tiered or indirect majority ownership to the same extent that it is satisfied by direct ownership. Therefore, we determine that Dead Sea is a "foreign state."

Next, we conclude that Dead Sea did not prematurely remove the instant cases, notwithstanding Defendants' failure to seek leave in state court to serve Dead Sea. Service was unnecessary to trigger Dead Sea's right, as a FSIA entity, to remove under the removal statute.

40

As for Plaintiffs' fraudulent joinder argument, we do not believe that the speed with which the removals occurred or the post-removal agreements between Defendants and Dead Sea are indicative of that reprobated tactic.  With respect to the *Jorge* and *Rodriguez* cases, the mere inclusion of disclaimers was insufficient to satisfy Plaintiffs' burden as to fraudulent joinder.  Plaintiffs failed to establish that Texas law or the law of any other jurisdiction precluded Defendants from asserting a cause of action against Dead Sea.

Finally, the district court did not abuse its discretion when it denied Plaintiffs' Rule 60(b)(2) motion and their request to sever the third-party claims from the primary claims and to remand those primary claims to state court.

**AFFIRMED.**[28]

---

[28] During the pendency of this appeal, the parties have filed numerous motions that have been held in abeyance.  Many of those motions pertain to various settlement agreements that have been entered into by some, but not all, of the plaintiffs with some, but not all, of the defendants in each of the cases involved in this appeal.  Among those motions pertaining to the various settlement agreements, several seek to dismiss this appeal due to those settlements.  Other parties to this appeal have filed objections to those motions for dismissal.  None of the consummated settlements required our approval as a condition of settlement, and none of the settlements required dismissal of this appeal as a condition of settlement.  Under those circumstances, we conclude that the most appropriate course of action is to deny all motions for dismissal of this appeal based on settlement; however, denial of those motions for dismissal should not be deemed or construed by any party as indicating our position, either pro or con, as to the validity or binding effect of those settlements.  Finally, all other pending motions are dismissed as moot.